

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable H. C. Petry, Jr.
County Attorney
Carrizo Springs, Texas

Dear Sir:

Opinion No. O-3059
Re: Taxability of cattle
brought into Dimmitt
County to graze for
few months.

From your letter of January 18, 1941, we understand the following to be substantially the facts: owners and lessees of land situated in Dimmitt County quite frequently bring cattle in under bond from Mexico and graze them on their owned or leased land for several months for the purpose of getting them ready for market, after which they are shipped on, presumably to market or for further fattening. You request our opinion in substance as to whether such cattle are subject to taxation by Dimmitt County, (1) where brought into the County subsequent to January lst of the year for which it is sought to assess them, and (2) where they were in the county on January lst of such year.

It is provided in Section 11 of Article 8, State Constitution, that "all property * * * shall be assessed for taxation and the taxes paid in the county where situated * * *."

Article 7153, Revised Civil Statutes, reads:

"All property, real and personal, except such as is required to be listed and assessed otherwise, shall be listed and assessed in the county where it is situated; and all personal property, subject to taxation and temporarily removed from the State or county, shall be listed and assessed in the county of the residence of the owner thereof, or in the county where the principal office of such owner is situated."

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable H. C. Petry, Jr., page 2

Article 7151, Revised Civil Statutes, contains the following:

"All property shall be listed for taxation between January 1 and April 30 of each year, when required by the assessor, with reference to the quantity held or owned on the first day of January in the year for which the property is required to be listed or rendered. Any property purchased or acquired on the first day of January shall be listed by or for the person purchasing or acquiring it. * * *"

A reading of the above seems clearly to indicate that a county may not tax tangible personal property brought into it for the first time after the first day of January of the year in question. Persuasive on this point are: Humble Oil and Refining Co. v. State, 3 S. W. (2d) 559; Childress County vs. State, 92 S. W. (2d) 1011; Winters vs. Independent School District, 208 S. W. 574; Hardesty Bros. v. Flemming, 57 Tex. 395. Accordingly your question is answered in the negative as to the cattle brought into the county subsequent to January first.

As to the cattle which were in the county on January first we reach a different conclusion. In order to show the court's holding in Hardesty vs. Flemming, supra, as well as in Clampitt vs. Johnson, 42 S. W. 866, we quote at some length from the latter opinion, as follows:

" * * * In Hardesty v. Flemming, 57 Tex. 395, cattle from the Indian Territory had drifted across the Texas line into Hansford county, upon the open range; and the owner kept employes in said county, about eight miles from the state line, to prevent the cattle from going further south. The cattle remained in Hansford county about five months, and were there on the 1st day of January. In considering the question of the owner's liability for taxes in Hansford county, the supreme court said: 'It

Honorable H. C. Petry, Jr., page 3

appears that these cattle were in the state for
about five months, including the 1st day of Janu-
ary; that they were not passing through the state,
nor brought here for the purpose of trade. There
is nothing in the record that would necessarily
lead to the conclusion that these cattle were not,
in the meaning of the law, situated in Hansford
county on the 1st day of January, 1880.' In People
v. Niles, 35 Cal. 282, it was said that cattle held
in a county for pasturage were not there transiently,
and were subject to taxation in said county. See
also, Cattle Co. v. Faught, 69 Tex. 402, 5 S. W.
494; Nolan v. Ranch Co., 81 Tex. 315, 16 S. W.
1064; Oil Co. v. Combs, 96 Ind. 179.

"It is quite certain from the testimony in this
case that appellee moved their cattle to Sterling
county intending to pasture them there until the
following spring. The drought in Runnels county
had so seriously affected the range as rendered it
necessary for them to procure a range elsewhere. The
cattle were moved in November, and it is a matter of
common knowledge that new grass does not spring up
and grow to any considerable extent in this state in
the months of November, December, January and Febru-
ary. Hence we say that it is reasonably certain that
appellees' purpose was to keep the cattle in Sterling
county from the time they placed them there until the
following spring, and this purpose was carried out,
as shown by the agreed facts; and while live stock
may be in a particular county under such circum-
stances as will not render them subject to taxation
in said county, as, for instance, while being driven
through the county, or held there temporarily for the
purpose of sale or trade, still we are satisfied that
the cattle referred to in this case were situated in
Sterling county on the 1st day of January, 1894, with-
in the meaning of the tax laws, and were therefore
subject to taxation in said county. * * *"

Honorable H. C. Petry, Jr., page 4

Being satisfied that so far as Texas laws are concerned the cattle which were so being grazed in Dimmitt County on January 1st are subject to rendition and taxation in that county, does any superior authority forbid such taxation? We believe not.

We have a similar request for opinion from the County Attorney of Hudspeth County, who calls attention to the opinion written by Assistant Attorney General Williford on February 14, 1938, calling attention to Section 1557, Title 19, U. S. C. A., and holding that such cattle may not be taxed by the county and State. Section 1555, Title 19, U. S. C. A., provides in part:

"Buildings or parts of buildings and other inclosures may be designated by the Secretary of the Treasury as bonded warehouses for the storage of imported merchandise entered for warehousing, or taken possession of by the collector, or under seizure, or for the manufacture of merchandise in bond, or for the repacking, sorting, or cleaning of imported merchandise. Such warehouses may be bonded for the storing of such merchandise only as shall belong or be consigned to the owners or proprietors thereof and be known as private bonded warehouses, or for the storage of imported merchandise generally and be known as public bonded warehouses. Before any imported merchandise not finally released from customs custody shall be stored in any such premises, the owner or lessee thereof shall give a bond in such sum and with such sureties as may be approved by the Secretary of the Treasury to secure the Government against any loss or expense connected with or arising from the deposit, storage, or manipulation of merchandise in such warehouse. * * *."

Section 1557, aforesaid, reads in part:

"Any merchandise subject to duty, with the exception of perishable articles and explosive substances other than firecrackers, may be entered for

Honorable R. C. Petry, Jr., page 5

warehousing and be deposited in a bonded warehouse at the expense and risk of the owner, importer, or consignee.  Such merchandise may be withdrawn, at any time within three years (or ten months in the case of grain) from the date of importation, for consumption upon payment of the duties and charges accruing thereon at the rate of duty imposed by law upon such merchandise at the date of withdrawal; or may be withdrawn for exportation or for transportation and exportation to a foreign country, or for shipment or for transportation and shipment to the Virgin Islands, American Samoa, or the island of Guam, without the payment of duties thereon, or for transportation and rewarehousing at another port; provided, that the total period of time for which such merchandise may remain in bonded warehouse shall not exceed three years (or ten months in the case of grain) from the date of importation. Merchandise upon which the duties have been paid and which shall have remained continuously in bonded warehouse or otherwise in the custody and under the control of customs officers, may be entered or withdrawn at any time within three years (or ten months in the case of grain) after the date of importation for exportation or for transportation and exportation to a foreign country, or for shipment or for transportation and shipment to the Virgin Islands, American Samoa, or the island of Guam, under such regulations as the Secretary of the Treasury shall prescribe, and upon such entry or withdrawal, and exportation or shipment, 99 per centum of the duties thereon shall be refunded.
* * **

We are unable to see any such conflict between the State's taxing property which is being held under such bonds and the operation of the Federal Statutes such as would lead to the suspension of the State taxing laws.  The property has definitely

Honorable H. C. Petry, Jr., page 6

come to rest. It is held at the pleasure of the owner, he may upon payment of the customs duties and charges levied by the Federal Government subject the property to local use or sale, or if he ships to a foreign country within three years he will not have to pay such duties. He may thus handle the property in such way as his interest dictates and in our opinion it should be deemed a part of the general mass of the property in this State and thus subject to non-discriminatory tax in accordance with the laws of this State. Minnesota vs. Blasins, 290 U. S. 1, 78 L. Ed. 131; 11 Am. Jur. pp. 67-68; 5 R. C. L. 708-9; 12 C. J. pp. 98-99.

Accordingly, our answer to the second part of your question is an affirmative one.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Glenn R. Lewis

Glenn R. Lewis
Assistant.

GRL:EV

APPROVEDFEB 24, 1941

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN